UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| VIRTUALPOINT, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> FASTTRAK, a Florida Partnership, <br> ROBERT VALLEY, an individual, <br><br> *Defendants.* | Case No: 5:17-CV-175-Oc-30PRV <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff VirtualPoint, Inc. ("VirtualPoint" or "Plaintiff"), by and through his undersigned attorneys, for his Complaint against Defendants FastTrak and Robert Valley (collectively, "FastTrak" or "Defendants"), alleges as follows:

## NATURE OF ACTION

1. Plaintiff VirtualPoint brings this complaint against Defendants for a Declaration from this Court that: (i) Plaintiff has not violated the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C § 1125(d) and is the rightful registered name holder or registrant of the <FastTrak.com> domain name registration (the "Domain Name"), which is the subject of a UDRP proceeding commenced by Defendants on April 4, 2017, captioned *FastTrak v. Virtual Point*, Case No. D2017-0652 (WIPO).

2. Plaintiff further seeks monetary and/or statutory damages and attorneys' fees for reverse domain name hijacking under 15 U.S.C. § 1114(2)(d)(iv).

## THE PARTIES

3. VirtualPoint is a California corporation with a principal place of business at 2967 Michelson Drive, #290, Irvine, CA, 92612-0657.

OCA - 8060  #420 —

4. Upon information and belief, Defendant FastTrak is a Florida partnership with a principal place of business in Clermont, Florida.

5. Upon information and belief, Defendant Robert Valley is an individual residing and domiciled in Clermont, Florida. Upon information and belief, Defendant Robert Valley is one of two partners of FastTrak.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. §§ 2201(a) and 2202, VirtualPoint seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction between VirtualPoint and FastTrak concerning VirtualPoint's rights in and to the Domain Name. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, and 28 U.S.C. § 1338(a), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States.

7. This Court also has personal jurisdiction over Defendants as Defendant Robert Valley is domiciled in this judicial district, and FastTrak's principal place of business is located within this judicial district.

## BACKGROUND

8. Plaintiff VirtualPoint, owned and operated by Dave Lahoti, is a web development firm based in Southern California that specializes in the purchase of prominent domain names and the development of websites thereon.

9. Dave Lahoti first registered the Domain Name, <FastTrak.com>, in October 2004. At all times since its registration by Mr. Lahoti in 2004, the Domain Name has been under registration by Mr. Lahoti, or by entities owned and controlled by Mr. Lahoti, including Plaintiff

VirtualPoint.

10. Over the past thirteen years, the registrant has been listed by such generic terms as, "Admin Manager" and "IT Manager," and more recently under the entities, "CrossPath," and "Captive Media."

11. In 2014, Mr. Lahoti changed the registrant field to "VIRTUAL POINT," which is the current listed registrant for the Domain Name.

12. Plaintiff also registered a similar domain, <Fastrack.com>, which it has been operating for two years since before being contacted by the Defendants.

13. Upon information and belief, Defendant has been conducting business under the name <FastTrak.biz> since 2010 – some six years after Mr. Lahoti registered the Domain Name.

14. Upon information and belief, Defendants applied in June 2016 for a U.S. design trademark registration for FASTTRAK F, which was granted in January 2017.

15. Shortly after, Defendants filed a baseless and factually erroneous UDRP complaint.

16. Defendants' motives in doing so are not hidden, or hard to figure out. In their Complaint, Defendants explain that: "the internet is our store front, and we would like to improve our online presence with the most common domain extension .COM."

17. Simply put, Defendants wished to move their storefront from the low-rent dot BIZ district to the gold standard, dot COM.

18. Defendants further admit that, in May 2016, they "contacted Virtual Point . . . to inquire about their asking price for the FASTTRAK.com domain name."

19. On May 18, 2016, VirtualPoint responded with a link to a message, which instructed Defendants to visit www.FastTrak.com for pricing information.

20. Defendants claimed that the selling price of $38,000, "clearly demonstrates bad faith use by VirtualPoint because they have registered FASTTRAK.COM for the sole purpose of selling it at a substantial profit."

21. In short, Defendants wished to purchase the Domain Name, but did not wish to pay for it.

22. In their UDRP filing, Defendants erroneously claimed that Plaintiff acquired rights to the Domain Name in late 2015. In reality, the Domain Name has been owned by Mr. Lahoti and his various entities continuously since 2004.

23. Defendants' claim that offering to sell a generic, dictionary word domain name for $38,000, "clearly demonstrates bad faith," is also terribly misguided, and lacks support under the law. Dictionary word domain names sell every day of the week for valuations ranging from the hundreds to thousands to millions of dollars.

24. Plaintiff did not register the Domain Name with any intent to sell it to Defendants, or with any initial intent to sell it at all. Plaintiff's primary business is in identifying and registering useful domain names for potential development.

25. Indeed, Defendant FastTrak did not even exist at the time that Mr. Lahoti registered the Domain Name in 2004.

26. The fact that Plaintiff responded to Defendants' inquiry by posting a sale price on the Domain Name in no way establishes that Plaintiff registered the Domain Name with the bad faith intent to profit off of Defendants' then non-existent mark.

27. "Fast Trak" is a purposeful misspelling of "Fast Track." "Fast Track" is a common phrase, which means "a route, course, or method that provides for more rapid results than usual."

28. There are over ninety websites that use some form of "FAST TRAK" in their names. Upon information and belief, hundreds, if not thousands, of businesses use some version of "FAST TRAK," "FAST TRACK," or "FAST TRAC" in their names and product names.

29. There are numerous U.S. trademark registrations, which include variants of "FAST TRACK," including "FASTTRACK" and "FAST TRAC."

30. Even if Defendants had acquired trademark rights prior to VirtualPoint's registration of the Domain Name – which they did not – Defendants still would be far short of establishing bad faith intent to profit, for the simple reason that "fast trak" is a common, dictionary phrase, widely used by numerous companies in connection with the offering of an array of goods and services.

31. Offering dictionary word domain names for sale is a legitimate business practice, much like investing in land is a legitimate business practice. Few people would question the concept of selling valuable land for greater than its purchase price. In the absence of any conceivable trademark violation, there is absolutely no basis for Defendants' claims of bad faith registration.

*The Reverse Domain Name Hijacking*

32. Defendants filed their UDRP Complaint with the bad faith intent to reverse hijack the Domain Name.

33. Mr. Lahoti registered the Domain Name in 2004, and has consistently maintained its registration through various entities ever since.

34. FastTrak did not exist prior to 2010.

35. FastTrak's filing of its UDRP Complaint was wholly disingenuous – FastTrak only filed after it was unsuccessful in its bid to purchase the Domain Name, or more to the point,

was unwilling or unable to pay for it.

36. Instead, FastTrak filed a frivolous UDRP Complaint, hoping that a Panel would disrupt and sever Plaintiff's ownership of a very valuable piece of Internet real estate.

37. As a result of Defendants' filing, Plaintiff's use and enjoyment of the Domain Name has been impaired.

## COUNT I:
## CLAIM FOR DECLARATORY RELIEF

38. VirtualPoint repeats and realleges paragraphs 1 through 36 of this Complaint, which are incorporated herein.

39. The term "FastTrak" is a deliberate misspelling of a common, dictionary phrase.

40. Numerous third parties offer goods and services under variants of the phrase, "FAST TRACK."

41. A person may register a generic word or phrase as a domain name on a first come, first served basis, as a general rule.

42. VirtualPoint, through its owner Mr. Lahoti, registered the Domain Name in good faith, six years before Defendants even existed.

43. Defendants own no exclusive rights to the term, "Fast Trak" in the United States.

44. Defendants filed the Administrative Action, claiming that the Domain Name was registered and used in bad faith.

45. The Policy provides that a party to a UDRP proceeding may commence an independent action in Court, at any time, seeking a *de novo* adjudication.

46. A justiciable controversy exists between VirtualPoint and Defendants.

47. To resolve this actual controversy, VirtualPoint seeks a declaration and judgment that its registration and use of the Domain Name is a valid use.

48. Defendants' conduct has harmed and will continue to harm VirtualPoint, thereby entitling VirtualPoint to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT II:
## BAD FAITH UDRP COMPLAINT: REVERSE DOMAIN NAME HIJACKING

49. VirtualPoint hereby incorporates the allegations of paragraphs 1 through 36 as if set forth here in full.

50. FastTrak initiated the UDRP proceeding against VirtualPoint in a bad faith attempt to deprive VirtualPoint of the Domain Name, when FastTrak had no exclusive right to the name "fast trak" in the USA.

51. Indeed, Defendants not only lacked exclusive rights, but also made no use of the FAST TRAK mark, whatsoever, until six years after Mr. Lahoti registered the Domain Name.

52. Under the UDRP rules, FastTrak had a duty to certify that the information contained in its UDRP Complaint and in its responses to procedural orders were, to the best of their knowledge, complete and accurate.

53. Instead, FastTrak knowingly provided the UDRP panel with false, incomplete, and misleading information concerning its rights in its purported "FAST TRAK" mark, in connection with its bad faith scheme to gain control over the Domain Name.

54. As a result of the Administrative Action, the Domain Name has been locked beyond Plaintiff's full enjoyment of the benefits of registration thereof in consequence of false statements made by Defendants under the UDRP followed by Domain Name registrar Dynadot. The Domain Name risks being transferred to Defendants if not for this action.

55. Plaintiff has provided Defendants with notice of this action.

56. FastTrak's conduct was knowing, intentional, and improper and caused VirtualPoint to suffer damages that will be established at trial.

57. Plaintiff has incurred costs, including, without limitation, attorneys' fees and court costs, among other business and reputational damages, in seeking to prevent the transfer of the Domain Name.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

A. Declaration by the Court that Defendant has no trademark rights that are subject to protection in the United States;

B. Declaration by the Court that, pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v), Plaintiff is entitled to registration, ownership and use of the Domain Names;

C. Declaration by the Court that, pursuant to 28 U.S.C. § 2201, Plaintiff's registration of the Domain Names is lawful and does not infringe on any trade or service mark right the Defendant may claim in the United States;

D. A Judgment that Defendant has knowingly and materially misrepresented that the Domain Names are identical or confusingly similar to a mark in which Defendant has rights.

E. Damages according to proof at trial, but in an amount not less than $100,000 for reverse domain name hijacking;

F. Punitive damages according to proof at trial;

G. Costs and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v) and reasonable attorneys' fees; and

  H.  For such other and further relief as this Court deems just and proper.

Dated:  April 20, 2017

              SHANNIN LAW FIRM, P.A.

              By: */s/ Nicholas A. Shannin*
              Nicholas A. Shannin, Esquire
              Florida Bar No. 0009570
              214 East Lucerne Circle, Suite 200
              Orlando, Florida 32801
              Tel: (407) 985-2222
              Fax: (407) 386-1901
              Email: nshannin@shanninlaw.com
                  service@shanninlaw.com

and

LEWIS & LIN, LLC

              By: */s/ Roberto Ledesma*
              Roberto Ledesma, Esq. (FL Bar No. 21813)
              Brett Lewis, Esq. (*pro hac vice* forthcoming)
              Justin Mercer, Esq. (*pro hac vice* forthcoming)
              45 Main Street, Suite 608
              Brooklyn, NY 11201
              Tel: (718) 243-9323
              Fax: (718) 243-9326
              Email: Roberto@iLawco.com
                  brett@iLawco.com
                  justin@iLawco.com

*Counsel for Plaintiff*